IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

MANUEL JOSEPH BAYYA,

        Defendant.

No. 3:13-cr-00558-HZ

OPINION & ORDER

Gerald M. Needham
Office of the Federal Public Defender
101 SW Main St., Ste.1700
Portland, OR 97204

   Attorney for Defendant

Gregory R. Nyhus
United States Attorney's Office
100 SW Third Ave., Ste. 600
Portland, OR 97204

   Attorney for Plaintiff

HERNÁNDEZ, District Judge:

Defendant Manuel Joseph Bayya pleaded guilty to one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1). The Government asserts that Bayya is subject to the fifteen-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on his previous convictions in Oregon for first-degree burglary. Oregon's first-degree burglary statute contains a single, "indivisible" set of elements that is broader than "generic burglary" under the ACCA. Therefore, Bayya's previous convictions for first-degree burglary do not qualify as ACCA predicates.

## BACKGROUND

Mr. Bayya was arrested in September of 2013 after the car in which he was riding as a backseat passenger was pulled over for a traffic violation. Government's Sentencing Memorandum ("Gov't Memo"), ECF No. 47, at 2–4. One of the responding officers noticed a gun under the driver's seat near Bayya's feet. Bayya denied it was his, but a subsequent search revealed ammunition in his pockets that fit the gun, and later testing revealed his fingerprints were on the weapon. Gov't Memo at 4–5. Upon properly identifying Bayya, police learned that he had an outstanding felony arrest warrant, arrested him, and booked him into the Marion County Jail. Gov't Memo at 4–5.

Prior to the September encounter, Bayya had been previously convicted for numerous felonies, including three separate convictions in Oregon for first-degree burglary. He was indicted in November of 2013 on one count of being a felon in possession of a firearm. Indictment, ECF No. 2, at 1. Shortly after the Court denied his motion to suppress, Bayya pleaded guilty to the single count on December 2, 2014.

At sentencing, the Government argued that Bayya should be classified as an Armed Career Criminal under 18 U.S.C. § 924(e) based on his previous felony convictions. If Bayya is subject to the sentencing enhancement under the Armed Career Criminal Act ("ACCA"), he faces a fifteen year minimum sentence; without the ACCA enhancement, the advisory guidelines range, given his criminal history and other factors, is thirty to thirty-seven months.

DISCUSSION

The ACCA provides a mandatory minimum sentence of fifteen years for a defendant with three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e). The ACCA defines "violent felony" as including any felony, state or federal, that "has as an element the use, attempted use, or threatened use of physical force" against another person, or that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Bayya pleaded guilty prior to the Supreme Court's decision in Johnson v. United States, invalidating the ACCA's so-called "residual clause" as unconstitutionally vague. 135 S. Ct. 2551, 2557–58, 2263 (2015); see also 18 U.S.C. § 924(e)(2)(B)(ii) (allowing the sentencing court to ask whether the defendant's previous conviction "otherwise involves conduct that presents a serious potential risk of physical injury to another."). After Johnson, there are two viable alternatives for finding that a defendant's prior conviction qualifies as a violent felony under the ACCA. First, the sentencing court asks whether the prior conviction required proof that the defendant used, attempted to use, or threatened to use physical force against another person. United States v. Snyder, 5 F. Supp. 3d 1258, 1262 (D. Or. 2014) (citing 18 U.S.C. § 924 (e)(2)(B)(i)). Second, if the crime does not include an element of force, the court asks whether the elements of the prior crime match the elements of one of the ACCA's list of "generic"

crimes: burglary, arson, extortion, or crimes involving explosives. 18 U.S.C. § 924(e)(2)(B)(ii); Summers v. Feather, No. 3:14-CV-00390-SU, 2015 WL 4663277, at *2 (D. Or. Aug. 5, 2015). "To determine whether a past conviction is for one of those crimes, courts use what has become known as the 'categorical approach': [t]hey compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013).

Bayya has three prior convictions in Oregon for first-degree burglary. There is no dispute that Bayya's burglary convictions do not qualify under the "force" prong of the ACCA analysis. The question, then, is whether Oregon's first-degree burglary statute qualifies as a "generic burglary" under the ACCA. Under Oregon law, a person commits burglary in the first degree if he or she enters or remains unlawfully in a building that is a dwelling with intent to commit a crime therein. See ORS §§ 164.225, 164.214; State v. Pipkin, 354 Or. 513, 515, 316 P.3d 255, 256 (2013). For ACCA purposes, the Supreme Court defines generic burglary as an "unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime." Descamps, 133 S. Ct. at 2283 (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)).

Superficially, the elements of the Oregon statute appear to match the elements of a generic burglary. But Oregon's burglary statute defines "dwelling" and "building" more broadly than those terms are understood in the generic federal burglary context. A "building" for the purposes of ACCA generic burglary is limited to the "common understanding of the word . . . a structure designed for occupancy that is intended for use in one place." United States v. Grisel, 488 F.3d 844, 848 (9th Cir. 2007) (citing Taylor, 495 U.S. at 598).

Oregon's burglary statute "expressly includes in its definition that which the Supreme Court expressly excluded from the generic, federal definition." Grisel, 488 F.3d at 850. A "dwelling" under Oregon law is defined as "a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." ORS § 164.205(2). ORS 164.204(1) provides that " '[b]uilding,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." Because of the broad definition of "building," first-degree burglary under Oregon law is not generic burglary. United States v. Mayer, 560 F.3d 948, 959 (9th Cir. 2009) ("Thus, first degree burglary in violation of Oregon Revised Statutes section 164.225 does not categorically satisfy the generic definition of burglary."); see also Taylor, 495 U.S. at 599 (explaining that "[a] few States' burglary statutes . . . define burglary more broadly [than the generic meaning of burglary] . . . by including places, such as automobiles and vending machines, other than buildings.").

A court employing the "categorical approach" must limit its review to only the "statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions." Descamps, 133 S. Ct. at 2283 (citing Taylor, 495 U.S. at 600) (internal quotation marks omitted). There are, however, a "narrow range of cases" in which a sentencing court can "look beyond the statutory elements to the charging paper and jury instructions" to determine whether the defendant is subject to an ACCA enhancement. Id. at 2283–84 (citing Taylor, 495 U.S. at 602). This so-called "modified categorical approach" is only available where the underlying statute is "divisible—*i.e.*, comprises multiple, alternative versions of the crime." Id. at 2284. The modified approach is a tool to assist the sentencing court in applying the categorical approach to a divisible statute where the court is unable to tell, without

resorting to the charging documents or jury instructions, which of the alternative "statutory phrase[s] was the basis for the conviction." Id. at 2285 (quoting Johnson v. United States, 559 U.S. 133, 144 (2010)).

The critical distinction between a "divisible" and "indivisible" statute is that a divisible statute must "contain multiple, alternative *elements* of functionally separate crimes," while an indivisible statute "may contain multiple, alternatives *means* of committing the crime." Rendon v. Holder, 764 F.3d 1077, 1084–85 (9th Cir. 2014) (citing Descamps, 133 S. Ct. at 2285 n.2; United States v. Cabrera-Gutierrez, 756 F.3d 1125, 1137 n.16 (9th Cir. 2014)). "Elements are 'those circumstances on which the jury must unanimously agree,' while 'means' are those circumstances on which the jury may disagree yet still convict.' " Summers, 2015 WL 4663277 (quoting Rendon, 764 F.3d at 1085–86).

"[W]hat constitutes a 'violent felony' within the meaning of the ACCA is an issue of federal law, but . . . in determining the meaning or scope of the crime of conviction, the federal courts are bound by the state courts' interpretations of state criminal statutes." United States v. Flores-Cordero, 723 F.3d 1085, 1087 (9th Cir. 2013), as amended on denial of reh'g (Oct. 4, 2013) (citing Johnson, 559 U.S. at 138). To determine whether a criminal statute sets out multiple crimes or multiple means, a court asks "whether the legislature intended to create two crimes or one." State v. White, 346 Or. 275, 280, 211 P.3d 248, 251 (2009); see also Pipkin, 354 Or. at 521–22 ("When faced with a claim that the state or federal constitution requires that jurors agree on one of several ways of committing a crime, a court initially should determine the legislatures intent in enacting the underlying criminal statute."). Factors that guide the court's analysis include the "text and context of the statute," the "visual form the statute takes," and, when necessary, the statute's legislative history. White, 346 Or. at 280–81 (citations omitted).

The text of the Oregon burglary statute suggests that "building" is a single element of first-degree burglary and does not encompass separate, alternative crimes. See Snyder, 5 F. Supp. 3d at 1263 (holding that Oregon's second-degree burglary statute, upon which Oregon's first-degree burglary statute relies, was indivisible). Although the statute includes a variety of places which qualify as a "building," there is no indication that the legislature intended to require juror unanimity about the type of building into which a defendant unlawfully entered or remained before finding him guilty of burglary. The Court could not find a case directly on point, but Oregon courts regularly refer to "dwelling" or "building" as a single element. See, e.g., State v. Taylor, 271 Or. App. 292, 296–97, 350 P.3d 525, 528 (2015) (internal citations omitted) ("[A] person commits first-degree burglary if the person enters or remains unlawfully in a building with intent to commit a crime therein and the building is a dwelling. The only element at issue is whether defendant entered a dwelling when he entered the breezeway of the home.").

Moreover, Oregon's model jury instructions for first-degree burglary only require the jury to find that the defendant "entered or remained unlawfully in the premises described in the charge" and that the "premises described in the charge is a dwelling." Or. Unif. Cr. Jury Instructions No. 1901 (2009 revision). The instructions then point to the statutory definition of "dwelling" and "building," but do not require the jury to come to a decision about what type of building is at issue.

Therefore, the Court finds that Oregon's first-degree burglary statute is indivisible; that conclusion necessarily prevents the Court from engaging in further inquiry under the modified categorical approach. Because Oregon's first-degree burglary statute is indivisible and broader than "generic burglary," Bayya's convictions for first-degree burglary under Oregon law do not qualify as predicates for an ACCA sentencing enhancement.

CONCLUSION

For the reasons stated, Defendant Bayya's prior convictions under Oregon's first-degree burglary statute do not qualify as predicate offenses under the ACCA. The Court will conduct sentencing consistent with this Opinion & Order on the previously scheduled date of December 16, 2015.

IT IS SO ORDERED.

Dated this 14 day of Dec, 2015.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge